IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

JAIME LUIS COLLAZO

CRIMINAL
NO. 99-304

## MEMORANDUM OPINION

**Schmehl, J.** */s/JLS*　　　　　　　　　　　　　　　　　　　　February 17, 2021

Before the Court is a *pro se* motion filed by Defendant Collazo that seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). The Government has filed a response, and Defendant's motion is now ready for decision.

**I.      STATEMENT OF FACTS**

In a jury trial in 1999, Defendant was convicted of one count of conspiracy in violation of 18 U.S.C. § 371, six counts of armed bank robbery in violation of 18 U.S.C. § 2113(d), two counts of attempted armed bank robbery in violation of 18 U.S.C. § 2113(d), eight counts of use of a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1), and five counts of money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and (2). Collazo organized a series of carefully planned bank robberies and attempted robberies that took place from February 3, 1997, through October 20, 1997, when Collazo was 33 and 34 years old.

Based on his six bank robberies and two attempted bank robberies, Collazo faced mandatory sentences totaling 145 years (1,740 months) on the eight 924(c) counts – five years for the first, and a consecutive term of 20 years for each of the other seven. In

addition, the guideline range at an offense level of 33 and criminal history category of VI was 235 to 293 months. On December 22, 1999, Judge Van Antwerpen sentenced Collazo to 2,033 months (169 years and 5 months).

Collazo is serving the sentence at FCI Fairton. He has served approximately 261 months and has credit for good conduct time of approximately 35 months, and therefore has served a term of approximately 296 months. His minimum release date is November of 2143.

On May 10, 2019, Collazo filed a previous motion for compassionate release based on Section 403 of the First Step Act of 2018, which altered the "stacking" of 924(c) sentences. The Court denied Collazo's motion, finding that Section 403 is non-retroactive and does not provide a basis for compassionate release. Then, on October 1, 2000, after unsuccessfully seeking the warden's support for compassionate release, Collazo filed another motion for compassionate release, essentially on the same grounds regarding the fact that he is serving "stacked" 924(c) sentences that would be lower under current law.[1]

Collazo's medical records show that he is generally in good health but suffers from obesity with a body mass index ("BMI") of 32.4. He also suffers from hypertension.

## II.   LEGAL AUTHORITY

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—

---

[1] Collazo did not file his motion for compassionate release based upon his medical conditions and the current COVID-19 pandemic. However, the Government obtained his medical records and determined that he is eligible for consideration based upon his obesity.

>    (1) in any case—
>
>    > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>    >
>    > > (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The relevant Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." In application note 1 to the policy statement, the Commission identifies "extraordinary and compelling reasons" that may justify compassionate release as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.—
>
> > (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is

3

       not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

  (ii) The defendant is—

    (I) suffering from a serious physical or medical condition,

    (II) suffering from a serious functional or cognitive impairment, or

    (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant

    (i)    is at least 65 years old;

    (ii)   is experiencing a serious deterioration in physical or mental health because of the aging process; and

    (iii)  has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

    (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.— As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Generally, the defendant has the burden to show circumstances that meet the test for compassionate release. *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019); *United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019).

If a defendant's medical condition is found to be the type of condition that puts a defendant at the increased risk of an adverse outcome from COVID-19, a court must then analyze the factors under section 3553(a) and the Sentencing Commission's policy statement. Section 3582(c)(1)(A) requires a court to consider the "factors set forth in section 3553(a) to the extent they are applicable" before a sentence may be reduced. These factors require a determination of whether the sentence served "reflect[s] the nature and circumstances of the offense and the history and characteristics of the defendant;" "reflect[s] the seriousness of the offense;" "promote[s] respect of the law;" and "afford[s] adequate deterrence to criminal conduct." The statute also instructs a court to consider the Sentencing Commission's policy statement, which allows a sentence reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13.

III. **DISCUSSION**

As stated above, Collazo has a BMI of 32.4, which is over the CDC's obesity threshold of 30. The CDC recognizes that obesity "increases your risk of severe illness from COVID-19" and advises people who are obese to "maintain[] social distancing precautions." The Government admits that Collazo is eligible for consideration for compassionate release because he presents a definite risk factor of obesity, that is, a body mass index of over 30. Therefore, his obesity places him at greater risk of an adverse

outcome from COVID-19, and Collazo does present an "extraordinary and compelling reason" for relief.

However, courts have been reluctant in general to grant compassionate release where, as here, mild obesity is the only risk factor presented. *See, e.g., United States v. Whiteman*, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020) (Pappert, J.) (mild obesity and hypertension of 42-year-old defendant fall short of establishing extraordinary circumstances); *United States v. Williams*, 2020 WL 4756743 (E.D. Pa. Aug. 17, 2020) (Pratter, J.) (mild asthma and obesity with a BMI of 31.5 are not extraordinary circumstances in the context of confinement at an institution that has not had a significant number of positive cases); *United States v. Whitsell*, 2020 WL 3639590, at *4 (E.D. Mich. July 6, 2020) (declines to view obesity alone as sufficient); *United States v. Edison*, 2020 WL 3871447, at *3 (D. Minn. July 9, 2020) (obesity alone "fails to meet the demanding standard for compassionate release."); *United States v. Aguilar*, 2020 WL 6081779, at *4 (N.D. Cal. Oct. 15, 2020) (denied to 27-year-old with BMI of 37.5); *United States v. Ackley*, 2020 WL 4193273, at *4 (N.D. Iowa July 21, 2020) (31-year-old's ailments are all minor, with only a risk factor of a BMI of 32.2).

The analysis does not end there though, as I also must examine the 3553(a) factors. In examining these factors, I must evaluate whether the sentence served reflects the nature and circumstances of the offense and the history and characteristics of the defendant, reflects the seriousness of the offense, promotes respect of the law, and affords adequate deterrence to criminal conduct.

First, including good time credit, Collazo has only served approximately 296 months of his 2033-month sentence for numerous bank robberies and attempted robberies.

That is approximately 25 years served of a 169-year sentence. It is true that Collazo's sentence would not be imposed on a current offender, as it was based upon an earlier version of 18 U.S.C. § 924(c) which required a mandatory consecutive 20-year term for each successive 924(c) conviction after the first, even when all offenses were prosecuted in the same case (a practice known as "stacking"). *See Deal v. United States*, 508 U.S. 129 (1993). (After Collazo's crimes, and before the First Step Act, the consecutive sentence for a successive crime was increased to 25 years.) Collazo was therefore sentenced to a five-year mandatory term on the first of his 924(c) offenses, and stacked consecutive terms totaling 140 years for the next seven.

In Section 403 of the First Step Act, effective December 21, 2018, Congress amended Section 924(c) to provide that the 25-year consecutive term for a successive 924(c) offense does not apply unless the defendant had a previous, final conviction for a 924(c) charge at the time of the offense. However, even under current law, Collazo would still face a very lengthy sentence. Today, the mandatory minimum sentence for each of the six 924(c) charges related to completed robberies would be seven years, which is now the minimum term for a crime involving "brandishing." That term would also apply to the 924(c) offense linked to an attempted bank robbery in which Collazo attacked a bank employee with the gun. The minimum sentence related to the other attempted bank robbery would be five years. The statutory requirement still applies that each such sentence must run consecutively to each other and to any other sentence imposed. That means the mandatory minimum sentence on the eight 924(c) counts, if charged today in the same initial 924(c) prosecution, would be 54 years, in addition to whatever guideline term the

Court elected to impose on the other counts. To date, Collazo has served just under 25 years, which would be less than fifty percent of an estimated sentence.

Further, Collazo spent his entire adult life either committing crimes or in prison. In 1982, at age 18, he burglarized a newsstand, and was sentenced to 6-48 months in prison. In 1984, at age 20, he attempted to steal a car, for which he was sentenced to 5-24 months in prison. In 1988, at age 24, he was arrested for possession of a controlled substance, and sentenced to 3-12 months in prison. In 1989, at age 26, he burglarized a car wash, and was sentenced to 8-36 months in prison. In 1991, at age 28, he was convicted for receiving stolen property and carrying firearms without a license and was sentenced to 18-60 months in prison. In 1995, at age 31, he was convicted of driving under the influence. Based on all these crimes, Collazo had 20 criminal history points when he was sentenced in this matter, which produced the highest criminal history category under the guidelines. Further, he was on parole when he went on the bank robbery spree in 1997.

Given all these circumstances, a reduction of Collazo's sentence to a point far below the mandatory sentence that would apply under current law is unwarranted. Collazo is a career criminal and continued incarceration is necessary to reflect the seriousness of the offenses, promote respect for the law, and provide just punishment for the offenses. *See e.g. United States v. Martin*, 2020 WL 3960433 (E.D. Pa. July 13, 2020) (Kearney, J.) (defendant committed a felony murder at age 18, a bank robbery at age 34, and then another bank robbery at age 44 for which he received a three-strikes life sentence; now, at age 66, he is suffering from COPD, asthma, obesity, coronary artery disease, ischemic cardiomyopathy, a blood clot in his heart, hypertension, and high cholesterol, but relief is denied due to his violent history); *United States v. Spencer*, 2020 WL 6504578 (E.D. Pa.

8

Nov. 5, 2020) (Beetlestone, J.) (64-year-old presents COPD, and has served over 20 years of a life sentence for ten armed robberies; release is denied given the nature of the offenses and his criminal record); *United States v. Millhouse*, 2020 WL 6799170 (E.D. Pa. Nov. 19, 2020) (Sanchez, C.J.) (relief denied after 170 months of 894-month sentence for violent robberies; he presents no risk factors; in addition, the robberies were violent, he attacked his court-appointed attorney with a razor blade in a proffer room, and he has 69 disciplinary infractions).

Accordingly, even though Collazo's obesity may increase his likelihood of an adverse outcome from COVID-19 and he is serving a stacked 924(c) sentence that is greater than what he would receive under today's law, when considering the 3553 factors, Collazo does not warrant a sentence reduction or release in any fashion at the present time.

## IV.    **CONCLUSION**

For the foregoing reasons, Collazo's motion for compassionate release is denied.